# EXHIBIT A

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Grant Scherling

_____
                                        Plaintiff
                    vs.

                                                        Case Number ____2023-CAB-001973____

Federal Insurance Company
_____
                                        Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Matthew B. Kapuscinski
_____
Name of Plaintiff's Attorney

Odin, Feldman & Pittleman, P.C.
_____
Address

1775 Wiehle Avenue, Suite 400, Reston, VA 20190

(703) 218-2137, Matt.Kapuscinski@ofplaw.com
_____
Telephone

_Clerk of the Court_

By _____
                        Deputy Clerk

                        **April 7, 2023**

Date _____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

Grant Scherling
_____
                    Demandante
        contra
                                            Número de Caso: _____
Federal Insurance Company
_____
                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Matthew B. Kapuscinski                               *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

Odin, Feldman & Pittleman, P.C.                Por: _____
_____
Dirección                                                          Subsecretario
1775 Wiehle Avenue, Suite 400, Reston, VA 20190
_____

(703) 218−2137, Matt.Kapuscinski@ofplaw.com    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화해주십시요        ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
## INFORMATION SHEET

| | |
|---|---|
| Grant Scherling | Case Number: _____ |
| **Plaintiff(s)** | |
| vs | Date: March 31, 2023 |
| Chubb Ltd., Bankers Standard Insurance Company, Federal Insurance Company and Erik Dahms | ☐ One of the defendants is being sued |
| **Defendant(s)** | in their official capacity. |

| | Relationship to Lawsuit |
|---|---|
| **Name:** *(Please Print)* <br> Matthew B. Kapuscinski | ☑ Attorney for Plaintiff |
| **Firm Name:** <br> Odin, Feldman & Pittleman, P.C. | ☐ Self (Pro Se) |
| **Telephone No.:**   **Unified Bar No.:** <br> (703) 218-2137   1020371 (DC) | ☐ Other: _____ |

**TYPE OF CASE:** ☐ Non-Jury    ☐ 6 Person Jury    ☑ 12 Person Jury

**Demand:** $ 1,470,000.00    Other: _____

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No.:_____  Judge:_____  Calendar #:_____

Case No.:_____  Judge:_____  Calendar #:_____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**CONTRACT**
- ☑ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

- ☐ **FRIENDLY SUIT**
- ☐ **HOUSING CODE REGULATIONS**
- ☐ **QUI TAM**
- ☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other

- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

---

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

_Mottlew Kapuscinski_
_____
Filer/Attorney's Signature

March 31, 2023
_____
Date



**Superior Court of the District of Columbia**
**Civil - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1133 | www.dccourts.gov**

**Case Number:** 2023-CAB-001973

**Case Caption:** Grant Scherling v. Chubb Ltd. et. al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
| --- | --- | --- |
| Friday, 06/30/2023 | 9:30 AM | Remote Courtroom 415 |

**Please see attached instructions for remote participation.**

Your case is assigned to Associate Judge Danya A Dayson.

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb415

   Meeting ID: 129 314 3475

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## **ACCESSIBILITY AND LANGUAGE ACCESS**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፦**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

**The remote site locations are:**



| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
|---|---|
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov




# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

### Los centros de acceso remoto son:



**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
03/31/2023 12:01:24 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

GRANT SCHERLING,
4303 Dahill Place
Alexandria, VA 22312

       Plaintiff,

v.

CHUBB LTD.
436 Walnut Street
Philadelphia, PA 19106

BANKERS STANDARD INSURANCE
COMPANY
436 Walnut Street
Philadelphia, PA 19106

FEDERAL INSURANCE COMPANY,
202 Halls Mill Road
Whitehouse Station, NJ 08889

       Defendants,

and

ERIK DAHMS,
100 Luna Park Drive, Apt. 120
Alexandria, VA 22305

       Released Defendant.

Case No.   **2023-CAB-001973**

**JURY DEMAND**

## **COMPLAINT**

    NOW COMES Plaintiff, GRANT SCHERLING, by and through his undersigned counsel,

complaining of Defendants, CHUBB LTD., BANKERS STANDARD INSURANCE

COMPANY and FEDERAL INSURANCE COMPANY, and Released Defendant, ERIK DAHMS,

jointly and severally, upon information and belief, stating as follows:

## NATURE OF THE CASE

1.      This is a civil action for breach of contract and unfair claims practices arising from

Plaintiff's contract of insurance with Defendants.

2.      As a result of an accident caused by the Released Defendant, ERIK DAHMS, the

Plaintiff sustained bodily injury beginning on April 3, 2019, causing damages of a personal,

pecuniary, and permanent nature.

3.      Plaintiff purchased and paid for an automobile and excess insurance policy from

Defendants, which provides broad insurance coverage for underinsured motorist protection.

4.      Plaintiff settled for the Released Defendant's liability limits with the consent of

Defendants and Defendants waived their right of subrogation against the Released Defendant, but

Defendants have refused to provide the purchased coverage to Plaintiff and have denied Plaintiff's

claim for benefits under the policies of insurance purchased by Plaintiff.

5.      Defendants have similarly refused to, or will refuse to, honor their obligations

under the policies of insurance purchased by Plaintiff.

## PARTIES

6.      Plaintiff, GRANT SCHERLING, is a resident of the Commonwealth of Virginia.

Plaintiff operated a certain vehicle 2004 BMW 325CI (the "Covered Vehicle") on April 3, 2019.

7.      Upon information and belief, Released Defendant, ERIK DAHMS, is a resident

of the Commonwealth of Virginia and was a resident of the District of Columbia on April 3,

2019.

8.      Defendant CHUBB LTD. is a Swiss corporation with its principal place of

business in Zurich, Switzerland. CHUBB LTD. has multiple executive offices in the United

States, including at 1133 Avenue of the Americas, New York, New York, 10036; 436 Walnut

Street, Philadelphia, Pennsylvania, 19106; and 202 Halls Mill Road, Whitehouse Station, New Jersey, 08889. CHUBB LTD. owns subsidiaries, directly and indirectly, that issue, among other things, casualty insurance.

9.     Defendant BANKERS STANDARD INSURANCE COMPANY ("BANKERS") is a Pennsylvania corporation with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania, 19106. Defendant BANKERS is a subsidiary of CHUBB and is duly qualified and licensed to issue insurance in the District of Columbia.

10.    Defendant FEDERAL INSURANCE COMPANY ("FEDERAL") is an Indiana corporation with its principal place of business at 202 Halls Mill Road, Whitehouse Station, New Jersey, 08889. Defendant FEDERAL is a subsidiary of CHUBB and is duly qualified and licensed to issue insurance in the District of Columbia.

11.    At all times relevant to this Complaint, CHUBB, BANKERS and FEDERAL, together with their actual, implied, and/or apparent agents, servants, and employees, are collectively referred to herein as "CHUBB" or "Defendants."

## JURISDICTION

12.    The Court has jurisdiction over the Released Defendant because he caused tortious injury in the District of Columbia by an act or omission in the District of Columbia. The Court has jurisdiction over CHUBB because CHUBB transacts business within the District of Columbia.

## FACTUAL BACKGROUND

13.    Plaintiff purchased a contract of insurance from Defendants, whereby Plaintiff agreed to make payments (in the form of premiums) to Defendants in exchange for Defendants' promise to indemnify Plaintiff for losses related to the operation of the Covered Vehicle, including,

but not limited to, underinsured motorist protection.

14.     Plaintiff's contract of insurance with CHUBB, including BANKERS, bears Policy Number 268-21-36-42A (the "Bankers Standard Policy") and was effective for the period of August 16, 2018, to August 16, 2019. The Bankers Standard Policy is attached hereto as **Exhibit A** and incorporated herein.

15.     Plaintiff's contract of insurance with CHUBB, including FEDERAL, bears Policy Number 13490403-04 (the "Federal Policy") and was effective for the period of July 15, 2018, to July 15, 2019. The Federal Policy is attached hereto as **Exhibit B** and incorporated herein.

16.     The Bankers Standard Policy and the Federal Policy (hereinafter collectively referred to as the "Policies") had collective limits of One Million Five Hundred Thousand Dollars ($1,500,000.00) in underinsured motorist protection per occurrence.

17.     Plaintiff paid all premiums owed to Defendants under the Policies, and Defendants accepted all such premiums from Plaintiff.

18.     The Bankers Standard Policy is a form policy issued by CHUBB, including BANKERS.

19.     The Federal Policy is a form policy issued by CHUBB, including FEDERAL.

20.     Plaintiff did not participate in the drafting or negotiating of the Policies with CHUBB.

21.     The Policies include standard forms used by CHUBB for all insureds having applicable coverage. The form policies are used by CHUBB subsidiaries BANKERS STANDARD INSURANCE COMPANY and FEDERAL INSURANCE COMPANY.

22.     The Underinsured Motorist Coverage (Virginia) Endorsement, Personal Auto form PP 14 03 01 05, in the Policies (hereinafter referred to as the "Endorsement") provided coverage

4

for Plaintiff as follows:

"We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" or an "insured's" legal representative is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" because of:

(1) "Bodily injury" sustained by an "insured" and caused by an accident; and

(2) "Property damage" caused by an accident.

The owners or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only after the limits of liability under any applicable bodily injury liability or property damage liability bonds or policies have been exhausted by payment of judgments **or <u>settlements</u>**." (emphasis added).

The Endorsement is attached hereto as **Exhibit C** and incorporated herein.

23.     By the terms of the Endorsement, a judgment against the underinsured motorist is not the only means of triggering Defendants' obligation to extend coverage provided by the Endorsement to Plaintiff.

24.     By the terms of the Endorsement, a settlement that exhausts the limits of any applicable bodily injury liability policy or policies of the underinsured motorist triggers Defendants' obligation to extend coverage provided by the Endorsement to Plaintiff.

25.     The Policies do not contain any contractual limitations period for bringing a legal action against Defendants.

26.     The Endorsement defines "Underinsured Motor Vehicle" as "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies, or all deposits of money or securities made to comply with the Virginia Financial Responsibility Law, that is 'available for payment' is less than the sums of the limits of liability applicable to the 'insured' for Uninsured Motorists Coverage under this policy or any other

5

policy." Endorsement, p. 1 Insuring Agreement ¶ D.

27.     The Endorsement defines "available for payment" as "the amount of liability coverage applicable to the claim of the 'insured' as reduced by the payment of any other claims arising out of the same occurrence." Endorsement, p. 1 Insuring Agreement ¶ D.

28.     At all times relevant to this Complaint, the Released Defendant was the owner and operator of an Underinsured Motor Vehicle (hereinafter the "Underinsured Motorist").

29.     On or about April 3, 2019, and at all times relevant to this Complaint, the 14th Street Bridge was a public bridgeway running in a general northeast and southwest direction at or above the Potomac River in the District of Columbia.

30.     On the date and place aforesaid, Plaintiff, GRANT SCHERLING, operated the Covered Vehicle northbound on the 14th Street Bridge and had stopped for traffic ahead of him.

31.     At the date and place aforesaid, a vehicle being driven northbound on the 14th Street Bridge by the Underinsured Motorist, ERIK DAHMS, struck the rear end of the Covered Vehicle driven by Plaintiff (hereinafter the "Occurrence").

32.     As a direct and proximate result of the Occurrence, the Plaintiff suffered bodily injuries.

33.     Plaintiff's injuries and the sequelae resulting from the Occurrence have caused past, present, and future pain and suffering, both mental and physical, and these injuries have required Plaintiff to expend large sums of money for past, present, and future medical care.

34.     Plaintiff's injuries will continue to disable Plaintiff from all other activities formerly associated with his person and station in life.

35.     Plaintiff has also been caused to lose time from work and the ability to engage in any productive occupation and Plaintiff has suffered and will continue to suffer loss of earnings

and wages and loss of earning capacity.

36.     At all times relevant to this Complaint, the Underinsured Motorist, ERIK DAHMS, was covered under a policy of insurance in effect with GEICO Casualty Insurance Company ("GEICO") which provided Thirty Thousand Dollars ($30,000.00) in liability coverage for bodily injury, which was tendered to Plaintiff.

37.     On or about February 24, 2021, Plaintiff notified CHUBB of the offer by GEICO to settle the claim Plaintiff had against the Underinsured Motorist, ERIK DAHMS, for the Thirty Thousand Dollars ($30,000.00) limits of the liability insurance policy applicable to the Occurrence.

38.     On or about March 1, 2021, CHUBB notified Plaintiff that it was waiving subrogation against the Underinsured Motorist ERIK DAHMS. The waiver of subrogation is attached hereto as **Exhibit D** and incorporated herein.

39.     On or about March 1, 2021, CHUBB advised Plaintiff that no excess coverage applicable to the Occurrence existed.

40.     On or about April 7, 2021, CHUBB consented to the terms of the Settlement Release with GEICO for the Thirty Thousand Dollars ($30,000.00) limits of the liability insurance policy of the Underinsured Motorist ERIK DAHMS, which Plaintiff accepted.

41.     On or about April 14, 2021, GEICO paid the limits of bodily injury coverage to Plaintiff. The Detailed Payment Summary is attached hereto as **Exhibit E** and incorporated herein.

42.     On or about April 27, 2021, Plaintiff executed the Settlement Release (hereinafter the "Release") of the Underinsured Motorist ERIK DAHMS. The Release is attached hereto as **Exhibit F** and incorporated herein.

43.     On or about April 27, 2021, the Underinsured Motorist ERIK DAHMS became

immune from liability for the Occurrence.

44.    As a result of the settlement and Release, Plaintiff became entitled to recover the limits of the applicable bodily injury policy for the Underinsured Motorist ERIK DAHMS pursuant to the terms of the Policies.

45.    The Release was executed with the concurrence of Defendants. The consent to release is attached hereto as **Exhibit G** and incorporated herein.

46.    By the terms of the Policies, Plaintiff is entitled to claim an additional One Million Four Hundred Seventy Thousand Dollars ($1,470,000.00) in underinsured motorist benefits from Defendants for the Occurrence.

47.    On February 8, 2022, Plaintiff sent proof of loss to CHUBB which enclosed Plaintiff's medical bills, which on that date totaled $132,967.99, as well as medical records related to treatment for spinal injuries Plaintiff sustained in the Occurrence. Plaintiff also submitted a claim for lost wages in the amount of $47,741.61.

48.    In response to the proof of loss, CHUBB offered to settle Plaintiff's underinsured motorist claim for the sum of Two Hundred Forty-Five Thousand Dollars ($245,000.00), which is substantially less than the full value of Plaintiff's losses.

49.    CHUBB's initial offer was made without a medical expert review of the records submitted by Plaintiff, including the complex spinal injuries suffered and claimed by Plaintiff.

50.    The parties engaged in continued settlement discussions from March 11, 2022, through October 24, 2022, wherein Defendants' claim representative repeatedly failed to respond in a timely manner.

51.    On October 24, 2022, CHUBB offered to settle Plaintiff's underinsured motorist claims for the sum of Three Hundred Fifty Thousand Dollars ($350,000.00), and requested the

following information from Plaintiff:

      a.   Any and all pre and post loss imaging studies for comparison;
      b.   All pre and post loss psychiatric and dental records;
      c.   Plaintiff's employment/personnel file;
      d.   An independent medical examination and neuroradiology review.

52.     On or about October 26, 2022, Plaintiff agreed to submit to a medical examination by a physician selected by Defendants at their expense pursuant to the terms of the Policies.

53.     On or about October 28, 2022, Plaintiff sent CHUBB a letter which demanded arbitration with CHUBB pursuant to the underinsured motorist provision of the Policies and appointed an arbitrator.

54.     As of the filing of this Complaint, CHUBB has not responded to Plaintiff's demand for arbitration nor sought to schedule a medical examination as it requested.

55.     Plaintiff has complied with the terms of the Policies.

56.     The Policies were in full force and effect on the date of the Occurrence.

## COUNT I

### (BREACH OF CONTRACT OF INSURANCE)

57.     Plaintiff incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

58.     The Policies are contracts under which CHUBB was paid premiums by Plaintiff in exchange for its promise to pay Plaintiff's losses for claims covered by the Policies.

59.     In the Endorsement, CHUBB agreed to pay for damages sustained by Plaintiff due to an automobile accident caused by an underinsured motorist after the limits of any applicable liability coverage policies were exhausted.

60.     Plaintiff has complied with all applicable provisions of the Policies and/or those provisions have been waived by CHUBB or CHUBB is estopped from asserting them and yet

CHUBB has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

61.    By refusing to pay Plaintiff the full amount of his claim for injuries and losses incurred by Plaintiff in connection with the Occurrence, CHUBB has breached its coverage obligations under the Policies.

62.    As a result of CHUBB's breaches of the Policies, Plaintiff has sustained substantial damages for which CHUBB is liable, in an amount to be established at trial.

WHEREFORE, Plaintiff, GRANT SCHERLING, moves this Honorable Court to enter judgment against the Defendants, CHUBB LTD., BANKERS STANDARD INSURANCE COMPANY, and FEDERAL INSURANCE COMPANY, jointly and severally, for compensatory damages in the amount of One Million Four Hundred Seventy Thousand Dollars ($1,470,000.00) together with costs and an award of attorney's fees herein incurred under Va. Code Ann. § 38.2-209, and such other relief as this Court deems just and fair.

## COUNT II

## (UNFAIR CLAIMS PRACTICE IN VIOLATION OF VA. CODE ANN. § 38.2-510)

63.    Plaintiff incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

64.    During the entirety of Plaintiff's underinsured motorist claim for the Occurrence, there has never been any question as to whether CHUBB is liable to Plaintiff for underinsured motorist protection.

65.    CHUBB has never offered Plaintiff an explanation of the basis of its refusal to arbitrate the claim.

66.    There has never been a good faith effort by CHUBB to fully compensate Plaintiff for his injuries and damages resulting from the Occurrence pursuant to the underinsured motorist

protection provided by the Policies.

67.     CHUBB compelled Plaintiff to institute this litigation in order to be able to pursue his underinsured motorist claims after Plaintiff obtained a settlement for the Underinsured Motorist's limits of bodily injury liability policy with the consent of CHUBB and pursuant to a waiver of its right of subrogation.

68.     At all times relevant to this Complaint, CHUBB was subject to the Code of Virginia including, but not limited to, Section 38.2-510, which prohibits Unfair Claims Practices.

69.     CHUBB has violated Section 38.2-510 of the Virginia Code regarding Plaintiff's underinsured motorist claim for the Occurrence by engaging in one or more of the following Unfair Claims Practices:

> a.  Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> b.  Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;
>
> c.  Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its polices;
>
> d.  Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
>
> e.  Compelling insureds to institute litigation to recover amounts due under their insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by them; and
>
> f.  Attempting to settle a claim for less than the amount to which a reasonable person would believe the claimant was entitled to.

70.     CHUBB's decisions and actions in response to Plaintiff's attempts to resolve his underinsured motorist claims for the Occurrence constitute an intentional attempt by Defendants to delay resolution of Plaintiff's underinsured motorist claim and has forced Plaintiff to incur the costs and attorney fees associated with the filing of this suit.

71.     Defendants' Unfair Claims Practices in handling of Plaintiff's underinsured motorist claims regarding the Occurrence as set forth herein constitutes bad faith on the part of Defendants within the meaning of Virginia Code Ann. § 38.2-209.

WHEREFORE, Plaintiff, GRANT SCHERLING, moves this Honorable Court to enter judgment against the Defendants, CHUBB LTD., BANKERS STANDARD INSURANCE COMPANY, and FEDERAL INSURANCE COMPANY, jointly and severally, for compensatory damages in the amount of One Million Four Hundred Seventy Thousand Dollars ($1,470,000.00) together with costs and an award of attorney's fees herein incurred under Va. Code Ann. § 38.2-209, and such other relief as this Court deems just and fair.

## COUNT III

### (DIRECT ACTION STATUTE (VA. CODE ANN. § 38.2-2206))

Plaintiff, GRANT SCHERLING, hereby moves the Court for a judgment and award in the name of the Released Defendant, ERIK DAHMS, and enforceable against Defendants, BANKERS STANDARD INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, pursuant to the terms of the Policies, for a sum in amount of One Million Four Hundred Seventy Thousand Dollars ($1,470,000.00), with interest and costs for the following:

72.     Plaintiff incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

73.     At all times relevant to this Complaint, the Released Defendant, ERIK DAHMS, was the owner or operator of an Underinsured Motor Vehicle as defined under one or more of the Policies providing Underinsured Motorist Coverage underwritten by Defendants, whom are being served pursuant to Virginia Code Ann. § 38.2-2206.

74.     This direct action against the Released Defendant, ERIK DAHMS, which is

12

enforceable against Defendants, is a contract action to recover under the Underinsured Motorist Coverage Endorsement of the Policies.

WHEREFORE, Plaintiff, GRANT SCHERLING, moves for entry of a judgment against the Released Defendant, ERIK DAHMS, and enforceable against Defendants, BANKERS STANDARD INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, for a sum in the amount of One Million Four Hundred Seventy Thousand Dollars ($1,470,000.00) together with interest and costs, and such other relief as this Court deems just and fair.

## JURY DEMAND

Plaintiff, GRANT SCHERLING, demands a jury trial on all issues so triable.

Respectfully Submitted,

**GRANT SCHERLING**

By counsel

_____

Matthew B. Kapuscinski, Esq.
DC Bar No. 1020371
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Telephone: (703) 218-2137
Fax: (703) 218-2160
Matt.Kapuscinski@ofplaw.com

_____

Thomas G. Gardiner, Esq.*
John R. Wrona, Esq.*
Daniel J. Hollis, Esq.*
GARDINER KOCH WEISBERG & WRONA
53 W. Jackson Blvd., Suite 950
Chicago, IL 60604
Telephone: (312) 362-0000
Fax: (312) 362-0440
tgardiner@gkwwlaw.com
jwrona@gkwwlaw.com
dhollis@gkwwlaw.com
*Pro Hac Vice Applications to be Filed

14

# EXHIBIT A

## CHUBB®

**RE:**  **Insured:** Grant C. Scherling
       **Policy Number:** 268213642
       **Effective Dates:** 08/16/2018 to 08/16/2019
       **Insurer:** Bankers Standard Insurance Company
       **Claim Number:** N/A

*This certifies that the attached document(s) constitute a true copy of the declarations, terms, exclusions and conditions of the above identified policy as of the date of this certification.*

*Date:* 4/7/21    *By:*

Bankers Standard Insurance Company

Chubb ® Private Risk Services- 1 Progress Point Parkway, O'Fallon, MO 63368
(800) 444-6161

 **CHUBB** **Platinum Portfolio**

**POLICY NUMBER: 268-21-36-42**

## POLICY SUMMARY - RENEWAL

Policy issued by **BANKERS STANDARD INSURANCE COMPANY** .

| NAMED INSURED: | AGENT OR BROKER: |
|---|---|
| GRANT C SCHERLING | BROWN & BROWN INSURANCE AGENCY OF VIRGINIA INC |
| 4303 DAHILL PL | 3931 UNIVERSITY DRIVE |
| ALEXANDRIA          VA     22312-1227 | FAIRFAX                  VA     22030 |
|  | Telephone: (703) 691-1300 |
|  | PRODUCER CODE:  57-0006 |

**This package contains your Insurance Policy.  Your bill will be mailed under separate cover.**

| COVERAGE | POLICY NUMBERS | EFFECTIVE DATES | PREMIUMS |
|---|---|---|---|
| AUTO | 268-21-36-42A | 08/16/2018  -  08/16/2019 | $      582.00 |

**TOTAL ANNUAL POLICY PREMIUM  $      582.00**

   10% PACKAGE CREDIT APPLIED TO VIRGINIA LOCATION(S)
   NOTE:$10.00 INSTALLMENT CHARGE IS ASSESSED PER INSTALLMENT BILLED

 **CHUBB**®          ### Platinum Portfolio®

**POLICY NUMBER: 268-21-36-42A**                                         A 0117

## AUTO DECLARATIONS PAGE

Policy issued by **BANKERS STANDARD INSURANCE COMPANY**

| NAMED INSURED: | AGENT OR BROKER: |
|---|---|
| GRANT C SCHERLING | BROWN & BROWN INSURANCE AGENCY OF VIRGINIA INC |
| 4303 DAHILL PL | 3931 UNIVERSITY DRIVE |
| ALEXANDRIA          VA    22312-1227 | FAIRFAX          VA    22030 |
| | Telephone: (703) 691-1300 |

**Policy Period From:** 08/16/2018      **To:** 08/16/2019         12:01 A.M. standard time

THIS DECLARATIONS PAGE WITH THE AUTO POLICY CONTRACT AND ANY AUTO ENDORSEMENTS COMPLETES YOUR RENEWAL POLICY.

### COVERED VEHICLE DESCRIPTION

| VEH | YEAR | MAKE | MODEL | VIN | DEDUCTIBLE COMP | COLL |
|---|---|---|---|---|---|---|
| 1 | 2004 | BMW | 325 | WBABD33464PL05283 | 250 | 1000 |

### COVERAGE DESCRIPTION          COVERAGE LIMIT       PREMIUMS

COVERAGE IS PROVIDED WHERE A COVERAGE LIMIT OR PREMIUM IS SHOWN FOR THE COVERAGE

| COVERAGE DESCRIPTION | COVERAGE LIMIT | VEH 1 |
|---|---|---|
| LIABILITY | 500,000 | 275.00 |
| UNINSURED MOTORISTS COVERAGE | 500,000 | 81.00 |
| PERSONAL INJURY PROTECTION | | 14.00 |
| (SEE ADDITIONAL POLICY INFORMATION) | | |
| OTHER THAN COLLISION - FULL GLASS | | 32.00 |
| COLLISION | | 134.00 |
| TOW AND LABOR COSTS | 100 | INCL. |
| | | |
| OPTIONAL COVERAGES PREMIUM | | 46.00 |
| VEHICLE PREMIUM | | 582.00 |

**TOTAL ANNUAL AUTO PREMIUM**          $582.00

**POLICY NUMBER: 268-21-36-42A**

A 0117

## RATING INFORMATION

| VEH | SYM | TERR | CLASS | COST NEW | USE | TYPE | BAND |
|-----|-----|------|-------|----------|-----|------|------|
| 1 | 19/19 | 042 | 885120 | | PLEASURE | PRV PSGR | 03 |

## DISCOUNT INFORMATION                          VEH  1

| | |
|---|---|
| ANTI-THEFT | 15% |
| PASSIVE RESTRAINT | 30% |
| ANTI-LOCK BRAKES | 5% |
| CONTINUOUS INSURANCE CREDIT | 2% |
| ACCIDENT FREE CREDIT | 5% |

## OPTIONAL COVERAGES                            VEH  1

AGREED VALUE                         14.00

VA TRANSPORTATION EXPENSE
OPTION 2-1,500                        32.00

## DRIVER INFORMATION

| DRIVER NAME | DATE OF BIRTH | SEX | MARITAL STATUS | LICENSE STATE | VEH | PRIN/OCCASIONAL OPERATOR | LICENSE NUMBER |
|-------------|---------------|-----|----------------|---------------|-----|--------------------------|----------------|
| GRANT | ********** | M | SINGLE | VA | 1 | PRINCIPAL | *************** |

## POLICY FORMS AND ENDORSEMENTS

MANDATORY FORMS FOR ALL VEHICLES

| | |
|---|---|
| * ACE01-1016 | CHUBB GROUP U.S. PRIVACY NOTICE |
| * ACE06-0117 | VIRGINIA IMPORTANT INFORMATION NOTICE |
| * ALL-20887A-0316 | PRODUCER COMPENSATION PRACTICES & POLICIES |
| * AUTO1018 ACE-0615 | JOINT OWNERSHIP COVERAGE - VIRGINIA |
| * AUTO151 ACE-0208 | VIRGINIA AUTO CONTRACT |
| * AUTO152 ACE-1015 | VIRGINIA AMENDMENT OF POLICY PROVISIONS |
| * AUTO155 ACE-0215 | VIRGINIA RATING INFORMATION FORM |
| * AUTO156 ACE-0208 | VIRGINIA LOSS PAYABLE CLAUSE |
| * AUTO195 ACE-0208 | VA WAIVER OF DEDUCTIBLE - OTHER THAN COLL COV |
| * CC-1K11H-0314 | SIGNATURES |

VEHICLE   1

| | |
|---|---|
| * AC5012 | ID CARD |

 **Platinum Portfolio®**

**POLICY NUMBER: 268-21-36-42A**

A 0117

## POLICY FORMS AND ENDORSEMENTS

VEHICLE   1

| | | |
|---|---|---|
| * | ACE05-0208 | NOTICE OF PREMIUM WAIVER |
| * | ACE133-0510 | OFAC POLICYHOLDER NOTICE |
| * | ACE154-0117 | VIRGINIA IMPORTANT NOTICES |
| * | ACE23-0117 | NEW BUSINESS NOTICE |
| * | ACE254-0815 | VA NOTICE OF ADVERSE UNDERWRITING DECISION |
| * | AUTO153 ACE-0116 | VIRGINIA MEDICAL EXP AND INCOME LOSS BENEFITS |
| * | AUTO154 ACE-0208 | VIRGINIA UNINSURED MOTORISTS COVERAGE |
| * | AUTO159 ACE-0208 | VIRGINIA TRANSPORTATION EXPENSES COVERAGE |
| * | AUTO162 ACE-0208 | VIRGINIA SINGLE LIMIT LIABILITY COVERAGE |
| * | AUTO163 ACE-0208 | VIRGINIA SINGLE LIMIT UNINSURED MOTORISTS CVG |
| * | AUTO164 ACE-0208 | VIRGINIA TOWING AND LABOR COVERAGE |
| * | AUTO169 ACE-0114 | VIRGINIA AGREED VALUE COVERAGE |
| * | AUTO176 ACE-0208 | VIRGINIA FULL WINDOW GLASS COVERAGE |
| * | AUTO193 ACE-0208 | VIRGINIA TRANSPORTATION EXPENSE OFFER FORM |
| * | AUTO83 ACE-0208 | AUTO DEDUCTIBLE RESERVE-COLLISION COVERAGE |
| * | PL544 ACE-0117 | NOTICE OF INFORMATION PRACTICES |
| * | PL552 ACE-0408 | AUTO INSURANCE CARD HOLDER |

* DENOTES COPY OF FORM ATTACHED

## ADDITIONAL POLICY INFORMATION

**DRIVER NAME**
GRANT

**DATE FIRST LICENSED**
07/09/1982

**PERSONAL INJURY PROTECTION COVERAGE**
   MEDICAL EXPENSE BENEFITS   10,000

**AGREED VALUE**

| VEH NUM | YEAR | MAKE | MODEL | PURCHASE DATE |
|---|---|---|---|---|
| 1 | 2004 | BMW | 325 | 01/01/2004 |

   AGREED VALUE:   $4,375

**PACKAGE POLICY NUMBER - 013490403**

03/30/2021

 **Platinum Portfolio®**

**CHUBB®**

**CHUBB GROUP
U.S. PRIVACY NOTICE**

| FACTS | WHAT DOES THE CHUBB GROUP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Insurance companies choose how they share your personal information.  Federal and state law gives consumers the right to limit some but not all sharing.  Federal and state law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br><br>•  Social Security number and payment history<br>•  insurance claim history and medical information<br>•  account transactions and credit scores<br><br>When you are no longer our customer, we continue to share information about you as described in this notice. |
| **How?** | All insurance companies need to share customers' personal information to run their everyday business.  In the section below, we list the reasons insurance companies can share their customers' personal information; the reasons the Chubb Group chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chubb share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |
| **Questions?** | Call 1-800-258-2930 or go to https://www2.Chubb.com/us-en/privacy.aspx | |

**ACE01 1016**

Page 2

| Who is providing this notice? | The Chubb Group.  A list of these companies is located at the end of this document. |
|---|---|
| **What we do** | |
| **How does Chubb Group protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings.<br><br>We restrict access to personal information to our employees, affiliates' employees, or others who need to know that information to service the account or to conduct our normal business operations. |
| **How does Chubb Group collect my personal information?** | We collect your personal information, for example, when you<br><br>•   apply for insurance or pay insurance premiums<br>•   file an insurance claim or provide account information<br>•   give us your contact information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>•   sharing for affiliates' everyday business purposes – information about your creditworthiness<br>•   affiliates from using your information to market to you<br>•   sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing.  See below for more on your rights under state law. |
| **Definitions** | |
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies.<br><br>•   Our affiliates include those with a Chubb name and other companies, such as Westchester Fire Insurance Company and Great Northern Insurance Company. |
| **Nonaffiliates** | Companies not related by common ownership or control.  They can be financial and nonfinancial companies.<br><br>•   Chubb does not share with nonaffiliates so they can market to you. |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>•   Our joint marketing partners include categories of companies such as banks. |

ACE01 1016

 **Platinum Portfolio®**

Page 3

## Other important information

**For Insurance Customers in AZ, CA, CT, GA, IL, MA, ME, MN, MT, NV, NC, NJ, OH, OR, and VA only:**
Under state law, under certain circumstances, you have the right see the personal information about you that we have on file.  To see your information, write Chubb Group Attention:  Privacy Inquiries, 202 Hall's Mill Road, P.O. Box 1600, Whitehouse Station, NJ  08889-1600.  Chubb may charge a reasonable fee to cover the costs of providing this information.  If you think any of the information is not accurate, you may write us.  We will let you know what actions we take.  If you do not agree with our actions, you may send us a statement.  If you want a full description of privacy rights that we will protect in accordance with the law in your home state, please contact us and we will provide it.  We may disclose information to certain third parties, such as law enforcement officers, without your permission.

**For Nevada residents only:** We may contact our existing customers by telephone to offer additional insurance products that we believe may be of interest to you.  Under state law, you have the right to opt out of these calls by adding your name to our internal do-not-call list.  To opt out of these calls, or for more information about your opt out rights, please contact our customer service department.  You can reach us by calling 1-800-258-2930, emailing us at privacyinquiries@Chubb.com, or writing to Chubb Group, Attention:  Privacy Inquiries, 202 Hall's Mill Road, P.O. Box 1600, Whitehouse Station, NJ 08889-1600.  You are being provided this notice under Nevada state law.  In addition to contacting Chubb, Nevada residents can contact the Nevada Attorney General for more information about your opt out rights by calling 775-684-1100, emailing bcpinfo@ag.state.nv.us, or by writing to: Office of the Attorney General, Nevada Department of Justice, Bureau of Consumer Protection: 100 North Carson Street, Carson City, NV 89701.

**For Vermont residents only:** Under state law, we will not share information about your creditworthiness within our corporate family except with your authorization or consent, but we may share information about our transactions or experiences with you within our corporate family without your consent.

## Chubb Group Companies Providing This Notice

This notice is being provided by the following Chubb Group companies to their customers located in the United States: ACE American Insurance Company, ACE Capital Title Reinsurance Company, ACE Fire Underwriters Insurance Company, ACE Insurance Company of the Midwest, ACE Life Insurance Company, ACE Property and Casualty Insurance Company, Agri General Insurance Company, Atlantic Employers Insurance Company, Bankers Standard Fire and Marine Company, Bankers Standard Insurance Company, Century Indemnity Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Chubb Insurance Company of New Jersey, Chubb Lloyds Insurance Company of Texas, Chubb National Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Pacific Employers Insurance Company, Pacific Indemnity Company, Penn Millers Insurance Company, Texas Pacific Indemnity Company, Vigilant Insurance Company, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company.



## Chubb Producer Compensation
## Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at https://www2.chubb.com/us-en/agents-brokers/chubb-producer-compensation.aspx or by calling the following toll-free telephone number:

1-866-512-2862.

**ALL-20887a (03/16)**

 **Platinum Portfolio®**

## VIRGINIA – IMPORTANT INFORMATION REGARDING YOUR INSURANCE

Your policy has been issued by Bankers Standard Insurance Company.

In the event you need to contact someone about this policy for any reason, please contact your agent.  If you have additional questions, you may contact the company at the following address and telephone number:

Chubb Personal Risk Services
P.O. Box 1600
Whitehouse Station, New Jersey 08889
1-866-324-8222

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

P.O. Box 1157
Richmond, VA 23218
1-800-552-7945

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent, company or the Bureau of Insurance, have your policy number available.

**ACE06 0117**

 **CHUBB**®

# Platinum Portfolio®

POLICY NUMBER:

**PERSONAL AUTO**
**PP 13 53 06 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## JOINT OWNERSHIP COVERAGE – VIRGINIA

The provisions of the policy apply unless modified by this endorsement.

### SCHEDULE

| Description And Type of Vehicle |
|---|
| 1. |
| 2. |
| 3. |

**Additional Liability Coverage Exclusion**

[X] If indicated to the left or in the Declarations, the additional Liability Coverage exclusion under Section II of this endorsement does not apply.

Coverage is provided where a premium and a limit of liability is shown for the coverage.

|  |  |  | Premium | | |
|---|---|---|---|---|---|
| **Coverages** | **Limit Of Liability** | | **Veh. 1** | **Veh. 2** | **Veh. 3** |
| **Liability:** **Bodily Injury** | $ | Each Person | $ | | |
|  | $ | Each Accident | | | |
| **Property Damage** | $ | Each Accident | $ | | |
|  | $ | Each Person | | $ | |
|  | $ | Each Accident | | | |
|  | $ | Each Accident | | $ | |
|  | $ | Each Person | | | $ |
|  | $ | Each Accident | | | |
|  | $ | Each Accident | | | $ |
| **Medical Expense Payments** | $ | Each Person | $ | | |
|  | $ | Each Person | | $ | |
|  | $ | Each Person | | | $ |
| **Income Loss Benefits** | $ | Each Person | $ | | |
|  | $ | Each Person | | $ | |
|  | $ | Each Person | | | $ |
| **Uninsured Motorists:  Bodily Injury** | $ | Each Person | $ | | |
|  | $ | Each Accident | | | |
| **Property Damage** | $ | Each Accident | $ | | |
|  | $ | Each Person | | $ | |
|  | $ | Each Accident | | | |
|  | $ | Each Accident | | $ | |
|  | $ | Each Person | | | $ |
|  | $ | Each Accident | | | |
|  | $ | Each Accident | | | $ |

| Collision | Less $ | Ded. | $ | | |
| | Less $ | Ded. | | $ | |
| | Less $ | Ded. | | | $ |
| Other Than Collision | Less $ | Ded. | $ | | |
| | Less $ | Ded. | | $ | |
| | Less $ | Ded. | | | $ |
| | Total Premium | | $ | | |

**I. Definitions**

The **Definitions** Section is amended as follows:

**A.** For the purpose of the coverage provided by this endorsement, "you" and "your" refer to two or more:

   **1.** Individuals, other than spouses, residing in the same household; or

   **2.** "Non-resident relatives";

who jointly own:

   **1.** A private passenger auto; or

   **2.** A pickup or van, for which no other policy provides coverage, that is not used for business or commercial purposes, other than farming or ranching.

**B.** The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

   **1.** Any vehicle shown in the Schedule or in the Declarations.

   **2.** A "newly acquired auto".

   **3.** Any "trailer" you own.

**4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** Loss; or

   **e.** Destruction.

This Provision **(4.)** does not apply to Coverage For Damage To Your Auto.

**C.** The following definition is added:

"Non-resident relatives" means two or more persons related by blood, marriage or adoption who reside in separate households. This includes a ward or foster child.

**II. Part A – Liability Coverage**

The following exclusion is added to Part **A** unless the Schedule or Declarations indicate that such exclusion does not apply:

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than "your covered auto" by any:

   **1.** "Non-resident relative"; or

   **2.** "Family member" of a "non-resident relative".



# Platinum Portfolio®

## PERSONAL AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

**1.** The "named insured" shown in the Declarations; and

**2.** The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

**1.** The end of 90 days following the spouse's change of residency;

**2.** The effective date of another policy listing the spouse as a named insured; or

**3.** The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

**1.** Under a written agreement to that person; and

**2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means:

**1.** In;

**2.** Upon; or

**3.** Getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

**1.** Private passenger auto; or

**2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

**J.** "Your covered auto" means:

**1.** Any vehicle shown in the Declarations.

**2.** A "newly acquired auto".

**3.** Any "trailer" you own.

**4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

This Provision **(J.4.)** does not apply to Coverage For Damage To Your Auto.

**K.** "Newly acquired auto":

**1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

**a.** A private passenger auto; or

**b.** A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

**(b)** For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

   **a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

   If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   **b.** Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   **(1)** 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   **(2)** Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

   **c.** Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   **(1)** 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   **(2)** Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".



# Platinum Portfolio®

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

**SUPPLEMENTARY PAYMENTS**

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

**EXCLUSIONS**

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

    **a.** Rented to;

    **b.** Used by; or

    **c.** In the care of;

    that "insured".

This Exclusion (**A.3.**) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (**A.4.**) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (**A.5.**) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

    **a.** Selling;

    **b.** Repairing;

    **c.** Servicing;

    **d.** Storing; or

    **e.** Parking;

    vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:

    **a.** You;

    **b.** Any "family member"; or

    **c.** Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6**.

    This Exclusion (**A.7.**) does not apply to the maintenance or use of a:

    **a.** Private passenger auto;

    **b.** Pickup or van; or

    **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**A.8.**) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or

   b. Is designed mainly for use off public roads.

   This Exclusion (**B.1.**) does not apply:

   a. While such vehicle is being used by an "insured" in a medical emergency;

   b. To any "trailer"; or

   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. Owned by a "family member"; or

   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **B** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

 **Platinum Portfolio®**

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto" shall be excess over any other collectible insurance.

## PART B – MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

   a. While "occupying"; or

   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a

**a.** Private passenger auto;

**b.** Pickup or van; or

**c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

**9.** Caused by or as a consequence of:

**a.** Discharge of a nuclear weapon (even if accidental);

**b.** War (declared or undeclared);

**c.** Civil war;

**d.** Insurrection; or

**e.** Rebellion or revolution.

**10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

**a.** Nuclear reaction;

**b.** Radiation; or

**c.** Radioactive contamination.

**11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

**a.** Competing in; or

**b.** Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part **A** or Part **C** of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto" shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C – UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member".

**2.** Any other person "occupying" "your covered auto".

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

**2.** To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.



# Platinum Portfolio®

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A. or Part B. of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

**1.** Workers' compensation law; or

**2.** Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

**3.** If the coverage under this policy is provided:

   **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

**A.** If we and an "insured" do not agree:

**1.** Whether that "insured" is legally entitled to recover damages; or

**2.** As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

| PART D – COVERAGE FOR DAMAGE TO YOUR AUTO |
| --- |

**INSURING AGREEMENT**

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**CHUBB**®                    Platinum Portfolio®

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. Loss; or

    e. Destruction.

## TRANSPORTATION EXPENSES

**A.** In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

    a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

    b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

    a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

    b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

    However, the most we will pay for any expenses for loss of use is $20 per day.

**B.** Subject to the provisions of Paragraph **A**, if the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

    a. Beginning 48 hours after the theft; and

    b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

© ISO Properties, Inc., 2003

**C.** Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (**1.**) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   **a.** Wear and tear;

   **b.** Freezing;

   **c.** Mechanical or electrical breakdown or failure; or

   **d.** Road damage to tires.

   This Exclusion (**2.**) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   **a.** Radioactive contamination;

   **b.** Discharge of any nuclear weapon (even if accidental);

   **c.** War (declared or undeclared);

   **d.** Civil war;

   **e.** Insurrection; or

   **f.** Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

   **a.** Radios and stereos;

   **b.** Tape decks;

   **c.** Compact disk systems;

   **d.** Navigation systems;

   **e.** Internet access systems;

   **f.** Personal computers;

   **g.** Video entertainment systems;

   **h.** Telephones;

   **i.** Televisions;

   **j.** Two-way mobile radios;

   **k.** Scanners; or

   **l.** Citizens band radios.

This Exclusion (**4.**) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion **4**.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion (**6.**) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:

   **a.** A "trailer", camper body, or motor home, which is not shown in the Declarations; or

   **b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

      **(1)** Cooking, dining, plumbing or refrigeration facilities;

      **(2)** Awnings or cabanas; or

      **(3)** Any other facilities or equipment used with a "trailer", camper body, or motor home.

   This Exclusion (**7.**) does not apply to a:

   **a.** "Trailer", and its facilities or equipment, which you do not own; or

   **b.** "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

      **(1)** Acquire during the policy period; and

      **(2)** Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**CHUBB**®                    **Platinum Portfolio**®

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. Special carpeting or insulation;

   b. Furniture or bars;

   c. Height-extending roofs; or

   d. Custom murals, paintings or other decals or graphics.

   This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. You; or

   b. Any "family member";

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

   1. Any "non-owned auto" which is a trailer is $1,500.

   2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or

   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The ap-praisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.
4. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.
5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F – GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

**CHANGES**

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.



# Platinum Portfolio®

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph **(A.)** do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A. Cancellation**

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   **a.** Returning this policy to us; or

   **b.** Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   **a.** At least 10 days notice:

      **(1)** If cancellation is for nonpayment of premium; or

      **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   **b.** At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium; or

   **b.** If your driver's license or that of:

      **(1)** Any driver who lives with you; or

      **(2)** Any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:

**(1)** During the policy period; or

**(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

**c.** If the policy was obtained through material misrepresentation.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

**3.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

© ISO Properties, Inc., 2003

 **CHUBB**®                    Platinum Portfolio®

**PERSONAL AUTO**
**PP 01 99 10 15**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF POLICY PROVISIONS - VIRGINIA

### I. Definitions

The following is added to the **Definitions** Section:

Throughout the Policy, "minimum limits" refers to the following limits of liability as required by Virginia law, to be provided under a policy of automobile liability insurance:

   **1.** $25,000 for each person, subject to $50,000 for each accident, with respect to "bodily injury"; and

   **2.** $20,000 for each accident with respect to "property damage".

Definition **K.** is replaced by the following:

**K.** "Newly acquired auto":

   **1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period or, if this is a renewal policy, during the 30 days prior to this Policy's effective date:

     **a.** A private passenger auto; or

     **b.** A pickup or van, for which no other insurance policy provides coverage, that is not used for business or commercial purposes other than farming or ranching.

   **2.** A "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Subject to the conditions stated in Paragraphs **3.** and **4.**, coverage begins on the date you become the owner. However, if the Declarations does not indicate that Coverage For Damage To Your Auto applies to at least one vehicle, Coverage For Damage To Your Auto will begin at the time you request the coverage.

     If you ask us to add or continue coverage after any specified time period as stated in Paragraph **3.** or **4.** has elapsed, any coverage we provide for a replacement or additional "newly acquired auto" will begin at the time you request the coverage.

   **3.** If a "newly acquired auto" **replaces** any vehicle shown in the Declarations:

     **a.** Any coverage provided in this Policy, **except** Coverage For Damage To Your Auto, is provided for the replacement vehicle until the end of the policy period without your having to ask us to insure it. However, if this is a renewal policy and you become the owner of a replacement vehicle during the 30 days prior to this Policy's effective date, you must ask us to insure it within 30 days after you become the owner.

     **b.** You must ask us to add or continue Coverage For Damage To Your Auto on the replacement vehicle within 30 days after you become the owner.

   **4.** If a "newly acquired auto" is **in addition to** any vehicle shown in the Declarations, you must ask us to insure the additional vehicle within 30 days after you become the owner.

### II. Part A - Liability Coverage

   **A.** The **Insuring Agreement** is replaced by the following:

**Insuring Agreement**

We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for damages which are payable under the terms of this Policy, even if any of the allegations of the claim or suit are groundless, false or fraudulent. In addition to our limit of liability, we will pay all defense costs we incur. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this Policy.

"Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".
2. Any person using or responsible for the use of "your covered auto".
3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Paragraph **4.** applies only if the person or organization does not own or hire the auto or "trailer".

**B.** The **Supplementary Payments** Provision is replaced by the following:

We will pay on behalf of an insured:

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this Policy.
2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.
3. All costs taxed against an "insured" and all interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.
5. Other reasonable expenses incurred at our request.
6. General average and salvage charges for which any "insured" becomes legally responsible because of an auto being transported.
7. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay our limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

These payments will not reduce the limit of liability.

**C.** Exclusion **A.6.** is replaced by the following:

We do not provide Liability Coverage for any "insured":

6. While employed or otherwise engaged in the "business" of:
   a. Selling;
   b. Repairing;
   c. Servicing;
   d. Storing; or
   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion does not apply:

   a. To the extent that this coverage provides the limits of liability required by the Financial Responsibility Law of Virginia; and
   b. To the ownership, maintenance or use of "your covered auto" by:
      (1) You;
      (2) Any "family member"; or
      (3) Any director, stockholder, partner, agent, or employee of you or any "family member".

**D.** The **Limit Of Liability** Provision is replaced by the following:

  **Platinum Portfolio®**

**Limit of Liability**

The Limit Of Liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the Limit Of Liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. However, subject to this limit of liability for each accident, when one auto accident involves more than one "insured" against whom claim is made or suit is brought, the Limit Of Liability shown in the Declarations for each person for Bodily Injury Liability applies separately to each "insured".

The Limit Of Liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made; or

3. Vehicles or premiums shown in the Declarations.

   **E.** Paragraph **B.** of the **Out Of State Coverage** Provision is replaced by the following:

      **B.** No one will be entitled to payment in excess of actual damages.

**III. Part B - Medical Payments Coverage**

Part **B** does not apply.

**IV. Part D - Coverage For Damage To Your Auto**

   **A.** Paragraph **A.** of the **Insuring Agreement** is replaced by the following:

      **A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

         1. Other than "collision" only if the Declarations indicates that Other Than Collision Coverage is provided for that auto.

         2. "Collision" only if the Declarations indicates that Collision Coverage is provided for that auto.

      If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

   **B.** The **Transportation Expenses** Provision does not apply.

   **C.** Exclusion **6.** does not apply.

   **D.** Exclusion **7.** is replaced by the following:

   We will not pay for:

      7. Loss to:

         **a.** A "trailer", camper body, or motor home, which is not shown in the Declarations; or

         **b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

            (1) Cooking, dining, plumbing or refrigeration facilities;

            (2) Awnings or cabanas; or

            (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

      This Exclusion does not apply to a:

         **a.** "Trailer", and its facilities or equipment, which you do not own; or

         **b.** "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

      **(1)** Acquire during the policy period; and

      **(2)** Ask us to insure within 30 days after you become the owner.

**E.** The following exclusion is added:

We will not pay for loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

"Diminution in value" as used in this exclusion means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**F.** The **Limit Of Liability** Provision is replaced by the following:

**Limit of Liability**

  **A.** Our limit of liability for loss will be the lesser of the:

     **1.** Actual cash value of the stolen or damaged property; or

     **2.** Amount necessary to repair or replace the property with other property of like kind and quality.

    However, the most we will pay for loss to:

     **1.** Any "non-owned auto" which is a trailer is $1,500.

     **2.** Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

  **B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**G.** The **Payment Of Loss** Provision is replaced by the following:

**Payment of Loss**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

     **1.** You; or

     **2.** The address shown in this Policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include:

     **1.** The applicable state and local sales and use taxes for the damaged or stolen property at the time of loss; and

     **2.** Any applicable titling and license transfer fees incurred in obtaining a replacement vehicle in the event of a total loss to a "your covered auto" or a "non-owned auto";

in addition to our limit of liability.

In the event of a total loss to a "your covered auto" or a "non-owned auto", we will satisfy any applicable salvage or disposal charges in addition to our payment.

**H.** The **Other Sources Of Recovery** Provision is replaced by the following:

**Other Insurance**

If other insurance also covers the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned" auto shall be excess over any other collectible insurance including, but not limited to:

**1.** Any coverage provided by the owner of the "non-owned auto";

**2.** Any other applicable physical damage insurance.

**V. Part E - Duties After An Accident Or Loss**

Part **E** is replaced by the following:



# Platinum Portfolio®

We have no duty to provide Liability Coverage or Coverage For Damage To Your Auto under this Policy if the failure to comply with the following duties is prejudicial to us:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** An "insured", as defined under Part **A**, seeking Liability Coverage, or any person seeking coverage under Part **D**, must:

    **1.** Cooperate with us in the investigation, settlement, or defense of any claim or suit.

    **2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

    **3.** Submit, as often as we reasonably require, to examination under oath and subscribe the same.

    **4.** Authorize us to obtain other pertinent records.

    **5.** Submit a proof of loss when required by us.

**C.** An "insured", as defined under Part A, seeking Liability Coverage must also:

    **1.** Submit, as often as we reasonably require, to physical exams by physicians we select. We will pay for those exams.

    **2.** Authorize us to obtain medical reports.

**D.** A person seeking Coverage For Damage To Your Auto must also:

    **1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

    **2.** Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

    **3.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**VI. Part F - General Provisions**

    **A.** The **Bankruptcy** Provision is replaced by the following:

    **Banruptcy**

    Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve us of any obligations under this Policy.

    **B.** The **Changes** Provision is replaced by the following:

    **Changes**

        **1.** This Policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

        **2.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

            **a.** The number, type or use classification of insured vehicles;

            **b.** Operators using insured vehicles;

            **c.** The place of principal garaging of insured vehicles;

            **d.** Coverages, deductibles, or limits.

    If a change resulting from **1.** or **2.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

        **3.** If we make a change which broadens coverage without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state.

    **C.** The **Legal Action Against Us** Provision is replaced by the following:

    **Legal Action Against Us**

    No legal action may be brought against us until there has been full compliance with all the terms of this Policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial. If that judgment is returned unsatisfied, legal action may then be maintained against us for the amount of the obligation that does not exceed the limits of applicable coverage under this Policy.

No person or organization has any right under this Policy to bring us into any action to determine the liability of an "insured".

**D.** Paragraph **B.** of the **Our Right To Recover Payment** Provision does not apply.

**E.** The **Termination** Provision is replaced by the following:

**Termination**

**Cancellation**

This Policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations, or his duly constituted attorney-in-fact, may cancel by:

   **a.** Returning this Policy to us; or

   **b.** Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing, in accordance with Virginia law, to the named insured shown in the Declarations at the address shown in this Policy:

   **a.** At least 10 days notice if the notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy;

   **b.** At least 15 days notice if:

      **(1)** This Policy has been in effect more than 60 days; and

      **(2)** Cancellation is for nonpayment of premium; or

   **c.** At least 45 days notice in all other cases.

3. After this Policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium;

   **b.** If you or your duly constituted attorney-in-fact has notified us of a change in your legal residence to a state other than Virginia, and "your covered auto" will be principally garaged in the new state of legal residence; or

   **c.** If your driver's license or that of:

      **(1)** Any driver who lives with you; or

      **(2)** Any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:

      **(1)** During the policy period; or

      **(2)** If the Policy is a renewal, 90 days immediately preceding the last effective date.

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail notice, in accordance with Virginia law, to the named insured shown in the Declarations at the address shown in this Policy. Notice will be mailed at least **45 days** before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than six months, we will have the right not to renew or continue this Policy every six months, beginning six months after its original effective date.

2. Six months or longer, but less than one year, we will have the right not to renew or continue this Policy at the end of the policy period.

3. One year or longer, we will have the right not to renew or continue this Policy at each anniversary of its original effective date.

 **Platinum Portfolio®**

**Automatic Termination**

If we offer to renew or continue and you or your representative does not accept, this Policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**Other Termination Provisions**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this Policy is cancelled, you may be entitled to a refund. If so, we will send you the refund. If we cancel, we will refund you the pro rata unearned premium. If you cancel, we will refund you 90% of the pro rata unearned premium, computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

F. The **Policy Period And Territory** Provision is replaced by the following:

**Policy Period and Territory**

This Policy applies only to accidents and losses which occur:

1. During the policy period, which:

   a. Begins from the date and time shown in the Declarations; and

   b. Ends as of 12:01 a.m. Eastern Standard Time on the last day of the policy period shown in the Declarations; and

2. Within the policy territory.

The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This Policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

G. The **Two Or More Policies** Provision is replaced by the following:

**Two or More Auto Policies**

If this Policy and any other auto insurance policy issued to you by us apply to the same accident, no one will be entitled to receive payment in excess of actual damages.

H. The following provision is added:

**Two or More Autos Insured Under This Policy**

1. When two or more "your covered autos" are involved in the same accident or loss, the terms of this Policy shall apply separately to each "your covered auto", including any applicable deductibles.

2. If an auto and an attached trailer are both insured under this Policy and involved in the same accident or loss, they shall be considered:

   a. One auto with respect to the limits of liability under Part **A**.

   b. Separate autos under Part **D**.

**VII. Miscellaneous Endorsements - Medical Expense And Income Loss Benefits Coverage**

Any reference to **Part B - Medical Payments Coverage** or no-fault coverage in any attached endorsement is replaced with **Medical Expense And Income Loss Benefits Coverage**.

# VIRGINIA RATING INFORMATION FORM

Your auto has been classified under a six digit numerical code (for example, 887110) as indicated in the policy declarations page. The information on the following pages explains the components of the classification code, and can help you determine how we classified your auto. We established the classification based on statements made by or on behalf of the named insured.

This classification is one of the components we use in developing your premiums for the following coverages: Bodily Injury and Property Damage Liability (or Single Limit Liability), Medical Expense, Other Than Collision and Collision.

Each digit of the six digit code represents a component of the classification plan we use. You can determine how we classified your auto by locating the six digit classification code on your policy declarations page and using the information on the following pages to determine what each digit represents.

We will use code 887110 as an example to explain how your auto is classified.

887110

The 1st digit (the 8 in the example 887110) is always 8 and identifies the auto as a private passenger auto.

887110

The 2nd and 3rd digits (the 87 in the example 887110) indicate the Operator Classification. It is based on the age, gender, marital status and driver training status of the operators.

## OPERATOR CLASSIFICATION
**(Identifies the Age, Gender, Marital Status and Driver Training Status)**

| Definitions | |
|---|---|
| **2nd and 3rd Digits** | **No Youthful Operator** |
| 03 | Principal Operator Age 75 or Over* |
| 80 | Principal Operator Age 65 to 74 |
| 85 | Principal Operator Age 50 to 64 |
| 86 | Only Operator Female Age 30 to 49 |
| 87 | All Other |
| **2nd and 3rd Digits** | **Youthful Unmarried Female, Not Owner Or Principal Operator** |
| 02 | Age 17, or less, Without Driver Training |
| 03 | 18 |
| 04 | 19 |
| 05 | 20 |
| 06 | Age 17, or less, With Driver Training |
| 07 | 18 |
| 08 | 19 |
| 09 | 20 |
| 25 | Age 21-24, With or Without Driver Training |

 **Platinum Portfolio®**

| Definitions | |
|---|---|
| **Youthful Unmarried Female, Owner Or Principal Operator** | |
| 12 | Age 17, or less, Without Driver Training |
| 13 | 18 |
| 14 | 19 |
| 15 | 20 |
| 16 | Age 17, or less, With Driver Training |
| 17 | 18 |
| 18 | 19 |
| 19 | 20 |
| 35 | Age 21-24, With or Without Driver Training |
| **Youthful Married Male** | |
| 92 | Age 17, or less, Without Driver Training |
| 93 | 18 |
| 94 | 19 |
| 95 | 20 |
| 96 | Age 17, or less, With Driver Training |
| 97 | 18 |
| 98 | 19 |
| 99 | 20 |
| 55 | Age 21-24, With or Without Driver Training |
| *NOTE: | If the 2nd and 3rd Digits are 03 and the 4th Digit is a 4, 5, 6 or 7, the operator is classified as a youthful operator. |

| 2nd and 3rd Digits | **Youthful Unmarried Male, Not Owner Or Principal Operator** |
|---|---|
| 40 | Age 17, or less, Without Driver Training |
| 40 | 18 |
| 45 | 19 |
| 45 | 20 |
| 46 | Age 17, or less, With Driver Training |
| 47 | 18 |
| 48 | 19 |
| 49 | 20 |
| 75 | Age 21-24, With or Without Driver Training |

| 2nd and 3rd Digits | **Youthful Unmarried Male, Owner Or Principal Operator** |
|---|---|
| 60 | Age 17,or less,Without Driver Training |
| 60 | 18 |
| 65 | 19 |
| 65 | 20 |
| 66 | Age 17, or less, With Driver Training |
| 67 | 18 |
| 68 | 19 |
| 69 | 20 |
| 70 | Age 21-29, With or Without Driver Training |

887110

The 4th digit (the 1 in the example 887110) indicates the Use Classification, which identifies the way the auto is used.

| USE CLASSIFICATION | |
|---|---|
| | **Definitions** |
| **4th Digit** | **No Youthful Operator** |
| 1 | Pleasure Use |
| 2 | Drive to Work Less Than 15 Miles |
| 3 | Drive to Work 15 Miles or More |
| 8 | Business Use |
| 9 | Farm Use |
| | **Youthful Operator** |
| 0, 1 | Pleasure Use or Farm Use |
| 2, 6 | Pleasure Use or Farm Use With Good Student Discount |
| 3, 5, 9 | Drive to Work or Business Use |
| 4 | Pleasure Use or Farm Use;Drive to Work or Business Use With Good Student Discount |
| 7, 8 | Drive to Work or Business Use With Good Student Discount |

887110

The 5th digit (the 1 in the example 887110) indicates the number of cars insured.

| NUMBER OF CARS | |
|---|---|
| **5th Digit** | **Number Of Cars Insured** |
| 1 | Only one car |
| 2 | More than one car |

Code 2 indicates that your policy has received a Multi-Car Discount. The discount applies if more than one private passenger auto is owned by an individual or owned jointly by two or more resident relatives, and two or more such autos are insured in the same company for any of the following coverages:

Bodily Injury and Property Damage Liability (or Single Limit Liability), Medical Expense, Other Than Collision or Collision.

887110

The 6th digit (the 0 in the example 887110) indicates the SAFE DRIVER CLASSIFICATION. This identifies points accumulated under the Safe Driver Insurance Plan, which is described below.

| SAFE DRIVER CLASSIFICATIONS | |
|---|---|
| **6th Digit** | **Number Of Points** |
| 0 | No Points |
| 1 | One Point, Surcharge for Accidents or Convictions |
| 2 | Two Points |
| 3 | Three Points |
| 4 | Four Points or More |
| 5 | One Point, But Licensed Less than Two Years, No Surcharge for Accidents |

   **Platinum Portfolio**®

## CLASSIFICATION DEFINITIONS

1. **BUSINESS USE** means that the use of the auto is required by or customarily involved in the duties of the applicant or any other person customarily operating the auto, in an occupation, profession or business, other than going to or from the principal place of occupation, profession or business.

2. **FARM USE** means the auto is principally garaged on a farm or ranch; and

    a. It is not customarily used in going to or from work other than farming or ranching, or driving to or from school; and

    b. It is not customarily used in any occupation other than farming or ranching.

3. **PLEASURE USE** means:

    a. No BUSINESS USE.

    b. Personal use including driving to or from work or school:

        (1) Less than 3 road miles one way; or

        (2) 3 or more, but less than 15, road miles one way for not more than 2 days per week or not more than 2 weeks in any 5 week period.

4. **WORK LESS THAN 15 MILES** means:

    a. No BUSINESS USE.

    b. Personal use including driving to or from work or school:

        (1) 3 or more, but less than 15, road miles one way if such usage is more than 2 days per week or more than 2 weeks in any 5 week period; or

        (2) 15 or more road miles one way, for not more than 2 days per week or not more than 2 weeks in any 5 week period.

5. **WORK 15 OR MORE MILES** means:

    a. No BUSINESS USE.

    b. Personal use including driving to or from work or school 15 or more road miles one way more than 2 days per week or more than 2 weeks in any 5 week period.

6. **YOUTHFUL OPERATOR** means an applicant or any other operator resident in the same household as the applicant, who customarily operates the auto, and is one of the following:

    a. **YOUTHFUL UNMARRIED FEMALE OPERATOR** - unmarried female under 25 years of age who is not an owner or principal operator;

    b. **YOUTHFUL UNMARRIED FEMALE OWNER OR PRINCIPAL OPERATOR** - unmarried female under 25 years of age who is an owner or principal operator;

    c. **YOUTHFUL MARRIED MALE OPERATOR** - married male under 25 years of age;

    d. **YOUTHFUL UNMARRIED MALE OPERATOR** - unmarried male under 25 years of age who is not an owner or principal operator;

    e. **YOUTHFUL UNMARRIED MALE OWNER OR PRINCIPAL OPERATOR** unmarried male under 30 years of age who is an owner or principal operator.

## CLASSIFICATION NOTES

1. A person in active military service with the armed forces of the United States of America is not considered a resident in the applicant's household unless this person customarily operates the auto.

2. If a YOUTHFUL UNMARRIED FEMALE OPERATOR or a YOUTHFUL UNMARRIED MALE OPERATOR is a student residing at an educational institution over 100 road miles from the auto's place of principal garaging, the auto is rated as if the student is MARRIED.

3. The applicable Driver Training Classification applies to each YOUTHFUL OPERATOR under 21 years of age where "Satisfactory Evidence" is presented that such operator has successfully completed an approved driver education course.

4. The applicable Good Student Classification applies to each owner or operator who is at least 16 years of age and is a full-time high school, college or university student and has met the requirements for the Good Student Discount. Generally, this means students with a "B" average or better.

5. An auto driven part way to or from work or school, such as to a railroad or bus depot, whether or not the auto is parked at the depot during the day, shall be considered as driving to or from work or school.

6. An auto used in the business of either the U.S. Government or in the business of the District of Columbia, by an employee thereof, may be classified and rated as PLEASURE USE, WORK LESS THAN 15 MILES or WORK 15 OR MORE MILES when either the federal employees using autos in government business endorsement, or the District of Columbia employees using autos in government business endorsement, whichever applies, is used to limit coverage.

7. An auto used in the business of the Commonwealth of Virginia, by an employee thereof who transports patients in the regular course of employment, may be classified and rated as PLEASURE USE, WORK LESS THAN 15 MILES, or WORK 15 MILES OR MORE when the Virginia employees using autos in government business endorsement is used to limit coverage.

## SAFE DRIVER INSURANCE PLAN (SDIP)

The Plan under which your policy is rated uses past experience, accidents and convictions, as part of the determination of your premium cost. The point system described below has been established under which those drivers that have no points receive the lowest premiums. Higher premiums are charged for other drivers based upon the number of points they have accumulated during the experience period.

1. **Convictions**

   Points are assigned for convictions during the experience period for motor vehicle violations of the applicant or any other currently resident operator.

   Points are assigned to the vehicle customarily driven by the operator responsible for incurring the points. Therefore, SDIP points are applied on a per-operator/per-vehicle basis.

   a. Three points are assigned for conviction of:

      (1) Driving while intoxicated or under the influence of drugs;

      (2) Failure to stop and report when involved in an accident;

      (3) Homicide or assault arising out of the operation of a motor vehicle; or

      (4) Driving while license is suspended or revoked.

   b. One point is assigned for convictions of any other moving traffic violation resulting in:

      (1) Suspension or revocation of an operator's license; or

      (2) The filing of evidence of financial responsibility under any Financial Responsibility Law required as of the effective date of the policy.

2. **Accidents**

   Points are assigned for each accident that occurred during the experience period, involving the applicant or any current resident operator, while operating an auto.

   Points are assigned to the vehicle customarily driven by the operator responsible for incurring the points. Therefore, SDIP points are applied on a per-operator/per-vehicle basis.

   a. One point is assigned for each auto accident that results in:

      (1) Bodily injury, or death; or

      (2) Total damage to all property, including his or her own, in excess of $1000.

   b. One point is assigned if one driver had two or more accidents during the experience period, each of which resulted in damage to property but have not been assigned a point under a. above.

   c. Not withstanding all other provisions of this section, no points are charged as a result of a motor vehicle accident unless the accident was caused in whole or in part by the fault of the insured.

   **EXCEPTIONS**

   a. No points are assigned for accidents incurred by an operator demonstrated to be a named insured or a principal operator of an auto insured under a separate policy.

   b. No points are assigned for accidents occurring under the following circumstances:

      (1) Auto lawfully parked (if the parked vehicle rolls from the parked position then any such accident is charged to the person who parked the auto);



# Platinum Portfolio®

(2) The applicant, owner, or other resident operator was reimbursed by, or on behalf of, a person who is responsible for the accident or has judgment against such person;

(3) Auto is struck in the rear by another vehicle and the applicant or other resident operator has not been convicted of a moving traffic violation in connection with the accident;

(4) Operator of the other auto involved in the accident was convicted of a moving traffic violation and the applicant or resident operator was not convicted of a moving traffic violation in connection with the accident;

(5) Accidents involving damage by contact with animals or fowl;

(6) Accidents involving Physical Damage, limited to and caused by flying gravel, missiles, or falling objects; or

(7) Accidents occurring when using an auto in response to an emergency if the operator of the auto at the time of the accident was a paid or volunteer member of any Police or Fire Department, First Aid Squad, or any law enforcement agency. This exception does not include an accident occurring after the auto ceases to be used in response to such emergency.

In addition, no points are assigned for an accident if the operator at the time of the accident was a law-enforcement officer as defined in VA. CODE ANN. Section 9-169, subdivision 9* and the accident occurred:

(a) In the course of the operator's employment as a law-enforcement officer; and

(b) While the operator was driving a motor vehicle provided by the employing law-enforcement agency, and was engaged in a law-enforcement activity at the time of the accident.

\* The term "law-enforcement officer" as defined in VA. CODE ANN. Section 9-169, subdivision 9 includes but is not limited to: any full-time or part-time employee of a police department or sheriff's office which is a part of, or administered by, the Commonwealth of Virginia or any political subdivision thereof. Refer to the law for a complete definition.

**3.  Refund Of Surcharged Premium**

If a point has been assigned for an accident and it is later determined that the accident falls under one of the surcharge exceptions listed above, we shall refund to you the increased portion of the premium generated by the accident.

**4.  Experience Period**

The experience period is the three years immediately preceding the effective date of the policy.

## PREMIUM DISCOUNTS

a.  A discount on Comprehensive Coverage is afforded for vehicles equipped with eligible anti-theft devices.

b.  A 5% discount on Bodily Injury and Property Damage Liability (or Single Limit Liability), Medical Expense and Collision coverages is afforded if the principal operator is age 55 or older and has voluntarily and successfully completed a Motor Vehicle Accident Prevention Course approved by the Virginia Department of Motor Vehicles.

c.  A discount on Medical Expense coverage is afforded for private passenger autos equipped with eligible factory installed automatic occupant restraints, conforming to the federal crash protection requirements. Discounts are provided for restraint systems meeting the criteria of either Paragraph **(1)** or **(2)** below:

(1) 20% discount is afforded when the restraint is installed in the driver-side-only position.

(2) 30% discount is afforded when the restraints are installed in both front outboard seat positions.

d.  A 5% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage) is afforded for those private passenger autos equipped with a factory installed four wheel Anti-Lock Braking system (ABS).

e.  A 30% discount on Bodily Injury and Property Damage Liability (or Single Limit Liability), Medical Expense and Income Loss Benefits, Comprehensive and Collision coverages is applied to the extra vehicle(s) when there are more vehicles than drivers.

f.  A discount on Bodily Injury and Property Damage Liability coverages ( or Single Limit Liability coverage),  Medical Expense coverage,  Comprehensive and Collision coverages and optional coverages may be afforded, depending on the Insurance Bureau Score (IBS) of the first named insured.

g.  A 10% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage), Comprehensive and Collision coverages is applied on package policies.  A package policy consists of an Auto, Home and Umbrella under the same policy number.

h.  A 5% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage), Medical Expense coverage, and Comprehensive and Collision coverages is applied if all operators have been accident free for the past three years.

i.  A. 4% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage), Medical Expense coverage, Comprehensive and Collision coverages and optional coverages is applied if the insured maintains continuous auto insurance for five years with this Company, an affiliate and/or one other carrier.  The discount is 2% for three years of continuous coverage.

j.  A. 5% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage), Medical Expense coverage, Comprehensive and Collision coverages and optional coverages is applied if the annual premium associated with all lines written with the Company or its affiliates is $25,000 or greater.

k.  A. 5% discount on Bodily Injury and Property Damage Liability coverages (or Single Limit Liability coverage), Medical Expense coverage, Comprehensive and Collision coverages and optional coverages is applied if the insured maintains a Valuables policy with a total limit of at least $75,000 or a jewelry coverage limit of at least $25,000.  An 8% discount is applied if the total limit is $150,000 or the jewelry limit is $100,000.

l.  A discount on Bodily Injury and Property Damage Liability coverages ( or Single Limit Liability coverage), Medical Expense coverage and Comprehensive and Collision coverages applies if the insured qualifies for a Mass Merchandising Program.

 **Platinum Portfolio®**

PP 03 05 08 86

## LOSS PAYABLE CLAUSE

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1986

THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

## VIRGINIA WAIVER OF DEDUCTIBLE - OTHER THAN COLLISION COVERAGE

The following is added to Section A under the Insuring Agreement in Part **D**:

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

**INSURING AGREEMENT**

In the event of a theft of "your covered auto", no deductible will apply under Other Than Collision Coverage to such loss if the auto is equipped with the Lojack anti-theft system.

This provision applies only to autos that show a deductible for Other Than Collision Coverage on the Declarations Page.

All other provisions of this policy apply.



# Platinum Portfolio®

## SIGNATURES

| Named Insured<br>GRANT C SCHERLING | | | | Endorsement Number | |
|---|---|---|---|---|---|
| Policy Symbol | Policy Number<br>268213642 | Policy Period<br>08/16/2018   to   08/16/2019 | | Effective Date of Endorsement | |
| Issued By (Name of Insurance Company)<br>BANKERS STANDARD INSURANCE COMPANY | | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11h (03/14)

 **CHUBB®**            # Platinum Portfolio®

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

*   Foreign agents;
*   Front organizations;
*   Terrorists;
*   Terrorist organizations; and
*   Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# VIRGINIA IMPORTANT NOTICE REGARDING
# HEALTH CARE AND DISABILITY BENEFITS

IN ADDITION TO THE MINIMUM INSURANCE REQUIRED BY LAW, YOU MAY PURCHASE ADDITIONAL INSURANCE COVERAGE FOR THE NAMED INSURED AND FOR HIS RELATIVES WHO ARE MEMBERS OF HIS HOUSEHOLD WHILE IN OR UPON, ENTERING OR ALIGHTING FROM A MOTOR VEHICLE, OR THROUGH BEING STRUCK BY A MOTOR VEHICLE WHILE NOT OCCUPYING A MOTOR VEHICLE, AND FOR OCCUPANTS OF THE INSURED MOTOR VEHICLE.   THE FOLLOWING HEALTH CARE AND DISABILITY BENEFITS ARE AVAILABLE FOR EACH ACCIDENT:

1. PAYMENT OF UP TO $2,000 PER PERSON FOR ALL REASONABLE AND NECESSARY EXPENSES FOR MEDICAL, CHIROPRACTIC, HOSPITAL, DENTAL, SURGICAL, AMBULANCE, PROSTHETIC AND REHABILITATION SERVICES, AND FUNERAL EXPENSES RESULTING FROM THE ACCIDENT AND INCURRED WITHIN THREE YEARS AFTER THE DATE OF THE ACCIDENT.  HOWEVER, IF YOU DO NOT PURCHASE THE $2,000 LIMIT OF COVERAGE, YOU AND THE COMPANY MAY AGREE TO ANY OTHER LIMIT; AND

2. AN AMOUNT EQUAL TO THE LOSS OF INCOME UP TO $100 PER WEEK IF THE INJURED PERSON IS ENGAGED IN AN OCCUPATION FOR WHICH HE RECEIVES COMPENSATION, FROM THE FIRST WORKDAY LOST AS A RESULT OF THE ACCIDENT UP TO THE DATE THE PERSON IS ABLE TO RETURN TO HIS USUAL OCCUPATION.  SUCH PAYMENTS ARE LIMITED TO A PERIOD EXTENDING ONE YEAR FROM THE DATE OF THE ACCIDENT.

IF YOU DESIRE TO PURCHASE EITHER OR BOTH OF THESE COVERAGES AT AN ADDITIONAL PREMIUM, YOU MAY DO SO BY CONTACTING THE AGENT OR COMPANY THAT ISSUED YOUR POLICY.

PLEASE CONTACT YOUR AGENT FOR THE COST FOR THESE ADDITIONAL COVERAGES.

 Platinum Portfolio®

## VIRGINIA IMPORTANT NOTICE REGARDING UNINSURED MOTORISTS COVERAGE

YOU ARE ENTITLED TO PURCHASE UNINSURED/UNDERINSURED COVERAGE LIMITS EQUAL TO THE LIABILITY LIMITS ON YOUR MOTOR VEHICLE POLICY. HOWEVER, ANY ONE NAMED INSURED HAS THE RIGHT TO REDUCE THE LIMITS OF THE UNINSURED/UNDERINSURED MOTORISTS COVERAGE TO LESS THAN THE LIABILITY LIMITS ON THE POLICY BUT NO LOWER THAN THE FINANCIAL RESPONSIBILITY LIMITS REQUIRED BY SECTION 46.2-472 OF THE CODE OF VIRGINIA. THE INSURER MAY REQUIRE THAT A REQUEST TO REDUCE COVERAGE BE IN WRITING. ONCE ANY ONE NAMED INSURED REDUCES THE POLICY LIMITS FOR UNINSURED/UNDERINSURED MOTORIST COVERAGE BELOW THE POLICY'S LIABILITY LIMITS, THAT ELECTION IS BINDING ON ALL INSUREDS ON THE POLICY. LATER, IF YOU DESIRE TO INCREASE YOUR LIMITS, YOU MUST MAKE A SPECIFIC REQUEST TO YOUR INSURER. YOU MAY WANT TO PUT THIS REQUEST IN WRITING.

BEFORE REDUCING THE LIMITS OF THE UNINSURED/UNDERINSURED MOTORIST COVERAGE, YOU SHOULD CAREFULLY CONSIDER THAT THIS COVERAGE PROVIDES IMPORTANT PROTECTION IN THE EVENT YOU ARE INJURED OR YOUR MOTOR VEHICLE IS DAMAGED DUE TO THE ACTION OF AN UNINSURED/UNDERINSURED MOTORIST.

ACE154 0117
Page 2 of 2

 **Platinum Portfolio®**

Dear Valued Client:                                                          (ACE23 – new package)

Welcome to the Chubb Platinum Portfolio® personal insurance program -- a program designed to handle the complex risks you face when you have substantial assets. Our unique "portfolio" approach of offering home, auto, valuables, watercraft, and umbrella liability coverage in one policy package makes handling those risks simple and efficient, while also providing superior levels of protection specifically suited to your lifestyle.

This folder contains your policy and other material related to your program. Inside, you will find:

- Your auto insurance identification card(s), which you must carry when driving your auto(s);
- A holder for each auto insurance card with useful tips in case you are involved in an accident;
- Your Policy Declarations, which list the coverage limits, deductible amounts, and other information specific to your policy;
- Your Comprehensive Coverage Contract, which contains the coverage terms of your policy and, together with the Declarations, represents your insurance contract;
- Special notices, if required by state regulations;
- Information sheets about how to report a claim and other aspects of your insurance program.

We encourage you to visit **www.chubb.com** where you can register to pay bills online, set up automatic payments, view policy and claims information, and more. Go directly to **www.chubb.com/register** to start now. The site also includes a Help section that offers ideas for better protecting your family and assets, as well as maximizing the value of your insurance program.

For our new clients such as you, we conduct a complimentary assessment of any home listed on your policy to help ensure that you have adequate protection in the unfortunate event of a significant loss. In some cases, we can also suggest steps for enhancing the security of your family and preventing damage to your property. Your agent should be able to provide additional details within the next few weeks.

If you have questions about your policy, your independent agent or broker will be happy to assist. For your convenience, we've listed your agent's contact information below.

        BROWN & BROWN INSURANCE
        AGENCY OF VIRGINIA INC
        3931 UNIVERSITY DRIVE

        FAIRFAX            VA   22030
        Telephone: (703) 691-1300

Thank you for choosing the Chubb Platinum Portfolio program. You can rest assured of our commitment to keeping your life simple, family safe, and wealth secure.

**ACE23 0117**

 **Platinum Portfolio®**

## Consumer Disclosure Notice

Many factors play a role in determining eligibility and pricing for insurance policies. As part of the underwriting and rating process, an inquiry was made by us with LexisNexis Risk Solutions Inc., our provider of Motor Vehicle Reports (MVR), loss information reports (CLUE Property and/or CLUE Auto) and credit based insurance scores.

ACE, as well as many other insurance companies, use credit based insurance scores combined with traditional risk evaluation factors because they provide an objective way to evaluate the risk. When insurance scores are combined with traditional risk evaluation factors, insurance companies can more accurately determine the risk a policy presents and thereby more accurately set the premiums to be charged.

We are required to tell you that, based on the information received, you were charged a higher premium than if we had not used your insurance score. The reasons shown on the reverse side of this notice identify the factors from your credit history affecting your premium.

Although we received a credit based insurance score for you, we do not obtain your actual credit report or specific information such as income; nor does it impact your ability to obtain additional credit.

LexisNexis Risk Solutions Inc. is unable to provide you with the specific reasons why the adverse action was taken, but they can provide you with a free copy of your report by contacting them within 90 days of the receipt of this notice at the following address:

> LexisNexis Consumer Center
> Mailing Address: PO Box 105108, Atlanta, Georgia  30348-5108
> Street Address:    1000 Alderman, Drop 55, Alpharetta, GA 30005
> 1-800-456-6004
> www.consumerdisclosure.com

You have the right to dispute inaccurate or incomplete information in your report and correct, amend or delete any information which may be wrong by contacting the consumer reporting agency directly at the address listed above.

**ACE254 0815**